DAVID WHITEFORD *vs.* CORNELIUS BURCKMYER AND ESTELL L. ADAMS.—*December* 1843.

It is a sound rule that before a party can discredit a witness by proof of his having made statements at variance with his testimony, the witness whom it is intended to impeach, should *first* be afforded a full and fair opportunity to recollect, by calling his attention to dates, names, or other attendant circumstances, as connected with the matter about which he is to be charged with having made different statements; but in the matter of the testimony which it is proposed to contradict, or in the manner of arriving at it, a party will not be allowed to violate any positive rule of evidence.

It is not permitted to ask a witness any fact which fancy or idle curiosity may suggest for the purpose of disproving it by another witness; nor is it proper to ask a witness, with the same view, of a fact proper in itself to be proved in the cause, if the only knowledge of such fact has been obtained through a source which the rules of evidence do not recognize as competent.

It is a rule of evidence, subject to very few and well defined exceptions, that a party cannot offer in evidence his own declarations in relation to the subject in controversy.

Where a question proposed to be asked of a witness involves several distinct members, the court is not bound to select from it such members as might be admissible, if unaccompanied by the others with which it is connected, and say that such particular portions of the testimony are proper.

A letter written by the plaintiffs in the cause to a third party, unaccompanied with other proof, is like their verbal declarations to him; and where it was intended to establish that the letter contained a certain enclosure, the party to whom it was addressed, and who received it, being a competent witness, is the best evidence to establish the fact.

In an action by an endorsee against the endorser of a bill of exchange, the drawer is a competent witness to prove that he had received notice of non-acceptance, and his declarations to a third person are not therefore the best evidence of that fact.

Where an agency is established, it is generally true, that an admission of an agent while in the execution of his agency, is admissible to charge his principal.

Whiteford *vs.* Burckmyer and Adams.—1843.

To entitle an appellant to a reversal for error in instructions, he must make good all the propositions contained in his motion, however numerous they may be.

The necessity for plain and satisfactory proof as to the *time of service* of notice of non-acceptance, where that is material, has always been insisted on; it may be proved by circumstantial testimony, but the circumstances must point *not to notice at some time,* but to notice on the day when the party had a right to expect and receive it.

Where several witnesses are examined, the testimony of any one of them may be selected from the mass of proof with which it is connected, and made the subject of an instruction.

A party may waive the privilege of claiming notice of protest, as he may any other right which the law has secured to him.

Under an allegation of notice of protest to an endorser in the declaration, the plaintiff may show a waiver of the right by the defendant.

It is the privilege of a party to raise any question of law arising out of the facts of the case, and to demand the opinion of the court distinctly upon it.

If the opposite party believes that other facts not embraced in the hypothesis assumed, are properly calculated to justify an application for other and different instructions, he has the equal privilege of asking an opinion on the additional facts, but not the privilege of controling and modifying the hypothesis of his antagonist, nor annexing modifications to it against the consent of the party moving it.

Where the holder of a bill of exchange, in Baltimore, sends it to a distant place, as Charleston, S. C., for acceptance, and it is not accepted, the plaintiff, in an action against an endorser, must show presentment for acceptance and refusal, and notice duly transmitted from Charleston to the endorser by mail, or if the notice to the endorser was sent by mail to the holder in Baltimore, that he delivered it within one day after the arrival of such notice in Baltimore, and the burthen of proof is on the plaintiff to show such notice given.

Where the language of an instruction is calculated to bias the mind of the jury upon a contested matter of fact, it is error.

Where the entire and exclusive interest in a bill is vested in the holder thereof, he cannot institute an action upon it in the name of another party.

Possession of a note endorsed in blank will enable the party having it to maintain suit, except *mala fides* be proved.

Courts of justice will never enquire in such cases, whether a plaintiff sues for himself or as trustee for another, nor into the right of possession, unless on an allegation of *mala fides.*

Blank endorsements may be filled up at the moment of trial.

If a bill has been transferred by endorsements, all of them in full, it can only be sued on by the special endorsee.

A bill payable to bearer, or a bill payable to order endorsed in blank, will pass by delivery and bare possession, is *prima facie* evidence of title.

If an agent receive a bill with all the endorsements in full, and the last in full to his principal, the agent cannot sue in his own name, or if the en-

dorsements are in blank, and he were to fill it up to himself or his principal, it could not be sued on in the name of a stranger.

Since the act of 1825, ch. 35, any holder with a blank endorsement may now sue in his own name, but that act cannot be construed to extend the right of action to one who has no interest in the bill, either as holder or owner.

It is a settled principle, that the court will not instruct the jury that there is no evidence of a material fact, if there be any evidence whatever tending to prove it.

An admission of notice by a defendant endorser is evidence, on which the jury may find notice, in due time, and in due form.

An action will lie upon notice of presentment, and non-acceptance of a bill of exchange, without waiting for demand of payment at the maturity of the bill.

The holder is not bound to present a bill payable on a certain day after date, for acceptance, unless he be an agent to get it accepted, or to collect it. If it be presented, and acceptance is refused, it is dishonored, and immediate notice must be given to the parties who are to be charged.

The act of 1837, ch. 253, was designed to extend the credit which, by the courtesy of commercial nations, had been given to the certificate of a notary public.

The certificate of a public notary had been received as *prima facie* evidence of the presentment by him for acceptance or payment, and of his protest of the bill for non-acceptance or non-payment.

The act of 1837, ch. 253, extends this doctrine as well to inland as to foreign bills or notes, as to notice sent or delivered in the manner stated in the protest.

It is not necessary that notice of protest be sent by mail, and a party is not bound to be more expeditious or certain than the mail.

Notice, if sent by mail, need not be enclosed to the address of the party to be charged. If it be received by him in due time, he cannot object to the mode of conveyance.

Where the protest does not show notice of dishonor transmitted to the party to be charged, that fact may be supplied by other proof.

The rule which excludes hearsay evidence is as obligatory in repelling and discrediting testimony, as in conformatory.

The declarations of a person who is a competent witness cannot be offered in evidence merely because they are in reply to the testimony of other witnesses.

A party may group into one instruction as many and as complicated facts as he pleases, to assume his testimony will prove, and ask the court to instruct the jury on the legal result of that mass of facts, but if amongst the enumerated facts there be such as it is not competent for the jury to act on, he must fail in his application.

Where the instruction given, authorised the jury to find one of three alternate and distinct propositions of fact, without saying which, it is error. It

would be impossible for them to ascertain whether they were thereby authorised to find the first, second or third alternation.

If counsel present to the court a complicated and involved statement, which it will be difficult for the jury to understand distinctly, it will be a sufficient ground upon which the court should refuse to give a direction in the terms asked for.

Appeal from *Baltimore* County Court.

This was an action of *assumpsit*, brought on the 9th October 1840, by the appellees against the appellant, who pleaded *non-assumpsit*. At the trial the following exceptions were taken:

1st Exception. The plaintiffs to support the issue on their part offered in evidence to the jury the following bill of exchange and protest:

"$1500. W. B.          *Baltimore, 1st January,* 1840.

Ninety days after date, please pay to the order of *David Whiteford*, fifteen hundred dollars, which charge as advised to account of        Your obedient servant,

NICHOLAS U. CHAFEE.

To *Messrs. Blum & Cobia*, Merchants, *Charleston, S. C.*"

(Endorsed,) *D. Whiteford.* Pay to order *Messrs. C. Burck-myer & Co. Th. Phenix.* The last endorsement had been erased before the trial.

UNITED STATES OF AMERICA, *City of Charleston, State of South Carolina.* On the sixth day of January, one thousand eight hundred and forty, &c., at the request of *Messrs. C. Burckmyer & Co.*, I, *A. C. Smith*, notary public, exhibited the original draft or bill, a copy thereof on the other side, to *Messrs. Blum & Cobia,* and demanded their acceptance thereof; to which they replied, we decline accepting for want of advice. I forwarded notices to the drawer and endorsers under cover, to *Th. Phenix, Esq.*, cashier of *Western Bank, Baltimore.* Therefore I, the said notary, at the request aforesaid, have protested, and by these presents do protest against the drawer of the said draft or bill, the endorsers and all others concerned, for, &c. Thus protested at the city of *Charleston,* &c. In testimony whereof, I, &c.

A. C. SMITH, *Not. Pub.*

And then proved the hand-writing of the drawer and endorser, and their partnership as stated in the declaration; and proved by *Mr. Hall*, that he was a clerk in the *Western Bank* in 1840, and that "N. A., January 11th, 1840," on the books of said bank, is in his hand-writing, and means notice of non-acceptance received on that day, but said witness did not remember either to have received from any one, or delivered to any one, any notice of protest for non-acceptance of the bill upon which this suit was brought. And then offered to prove by *Mr. Taylor*, that he was the runner of the *Western Bank* in 1839 and 1840, who, on his examination in chief, stated, that to the best of his knowledge, he had a notice of protest for *Whiteford* and *Chafee*, which he took to *Whiteford*, the defendant, at his store, who told him to take it to *Chafee*, and that he took it to *Chafee's* dwelling and gave it to some of the females of the family, *Chafee* being then absent at his place of business, his distillery ; that witness delivered all notices for *Chafee* at *Whiteford's* store, either to *Whiteford* himself, or a clerk in his store; that all but this one were left there. This witness thought, was left in January, 1840; what time in that month he could not say. Witness told *Whiteford* they were notices of protest for drawer and endorser.

On cross examination, witness stated, that he had not read these notices, nor did he know what their contents were; that he made no memorandum of the time when he left them, nor of the fact of doing so.

. The plaintiffs then called *Thomas Phenix*, cashier of the *Western Bank*, as a witness, who stated, after the bill was returned in October 1840, he took the bill and protest to *Whiteford* and asked him for payment; that *Whiteford* expressed great surprise, and said he had no notice of protest for non-payment. Witness replied, the bank had none either, but you had notice of non-acceptance; to which *Whiteford* replied, yes, I might have had that, and objected to payment for want of notice of protest for non-payment. Whereupon, the counsel of defendant asked said witness if he had never stated, that he, witness, had given this notice to said *Whiteford*, who

replied he never had said so.   Whereupon, the counsel for defendant proposed to ask said witness, in order to discredit him by other witnesses, and to show his statements at other times to have been at variance with his evidence now given; whether said witness, after suit brought, had not called upon *Whiteford* to induce him to settle this bill, and whether said *Whiteford* did not at that time state to said witness, that he was not liable for said bill, because he had never received any notice whatever of protest, either for non-acceptance or non-payment, and that said witness replied, *Mr. Whiteford*, you are mistaken, I gave you the notice myself; to which *Whiteford* rejoined, you never did, nor did any one else.   To the admissibility of which question the counsel objected, and the court (PURVIANCE, A. J.) refused the said question to be put to the witness in the manner above stated.   The defendant excepted.

2ND EXCEPTION.   The plaintiffs and defendant having given in evidence the facts and circumstances stated in the first exception, which it is agreed shall form part of this, the defendant proved that the bill in question was discounted by the *Western Bank*, and by them transmitted to the plaintiffs, their agents at *Charleston*, for collection; and also proved that said bill was returned to the bank with the following letter:

*Charleston, September 26th*, 1840.

To *T. Phenix, Cashier*,—We herewith return you this protested draft of *N. U. Chafee*, on *Blum & Cobia*, for $1,500.

(Signed,)          BURCKMYER & Co.

And also, gave in evidence the following letter, written by order of the bank to the defendant:

*Western Bank, September 30th*, 1840.

*Sir*,—*Blum & Cobia's* note, $1,500, upon which you are endorser, has this day been returned unpaid, to which you will please attend.   Respectfully,          W. B. BERRY.

By order, *Th. Phenix, Cashier*.

(Endorsed,) *Mr. D. Whiteford.*   Present.

Whereupon, the plaintiff in order to shew an interest in the bill in question in the plaintiffs, or that they were in possession

thereof at the time suit was brought, offered in evidence the following letter, written to the bank:

Charleston, October 7th, 1840.

Mr. T. Phenix, Baltimore.  Dear Sir,—Your favor of 30th ultimo and 2nd inst. are at hand, returning Chafee's draft on Blum & Cobia, $1,500. This draft was regularly noted for non acceptance, and the drawer and endorser furnished with notice of the same.  Our young man laid it away in our chest, where it was overlooked; but as Messrs. Blum & Cobia had not, nor have had since, any funds of the drawer, we do not think much of the honor of the indorser who would take advantage of an oversight, when no loss has accrued to him thereby.  We presume, according to strict mercantile usage, we are responsible to you, but only when you have proceeded against the draft, and obtained from the parties all you can; the balance, if any, we will have to make up.  We therefore return you the draft, with protest for non-acceptance.  For the purpose, however, of settling this unfortunate business, if you can make a compromise with them at once, and yield up a part, we will make up the deficiency at once.  We remain yours, respectfully,

C. BURCKMYER & Co.

Neither Messrs. Blum & Cobia, or Messrs. Caldwell & Sons, have any property of Mr. Chafee's.

To the admissibility of which, defendants objected, but the court overruled the objection, and allowed the evidence to go to the jury.  The defendants excepted.

3RD EXCEPTION.  The plaintiffs and defendant, to support the issue on their parts, having offered in evidence to the jury the facts stated in the previous bills of exceptions, which it is agreed shall form part of this, the defendant called a witness who proved, that Thomas Phenix stated to Mr. Whiteford, the defendant, in a conversation in February 1841, that he, said Phenix, had served the notice on said Whiteford himself: and also proved that said Phenix was not in Baltimore from the 9th to the 15th January, 1840, and that a letter mailed in Charleston on the 6th January, 1840, would have reached Baltimore on the morning of the 11th of that month.  The plain-

tiff, in order to corroborate the evidence of $\dot{T}$. *Phenix*, then called *Mr. McMahon* and *Mr. Collins* to prove prior statements by *Phenix* to them, and after suit brought, and before February 1841, of his conversations with *Whiteford*, of which he has testified, to confirm his testimony in relation to them. To which the defendant objected, but the court allowed the evidence to go to the jury. The defendant excepted. (This exception was abandoned at the trial.)

4TH EXCEPTION. The plaintiffs and defendant, having given in evidence the facts stated in the preceding exceptions, which it is agreed shall form part of this, the defendant further proved by two witnesses, that they were clerks of *N. U. Chafee*, not living in his house, in January 1840, and that they never saw, knew or heard of any protest, or notice of protest, of the draft now in suit, for either non acceptance or non-payment, until September or October 1840. The plaintiffs then offered to prove, that shortly after the time when these notices must have been received, *Chafee* called at the *Western Bank* and stated to witness, that notwithstanding the protest for non-acceptance, the bill would be paid at maturity. To the admissibility of which statements by said *Chafee*, in order to affect in any way the draft in this cause, the counsel for the defendant objected, but the court overruled the objection, and allowed the evidence to go to the jury. The defendant excepted.

The plaintiffs and defendant having given in evidence the facts and circumstances as stated in the foregoing exceptions, which it is agreed shall form part of this, the defendant then proved what is stated in the foregoing agreement:

It is admitted, that a letter leaving *Charleston* by the mail of the 7th January 1840, would have reached *Baltimore* on the morning of the 11th, before 9 o'clock, and that defendant is, and always has been, a resident of *Baltimore*, and that the 11th January 1840, was Saturday. And also, that *Thomas Phenix* was absent from *Baltimore* during the 10th, 11th, 12th, 13th and 14th January 1840, and proved by said *Phenix*, that he never saw the notices of protest for non-acceptance, and

proved by *Berry, Hull and Mason*, clerks in said bank, that they never saw said notices, and know nothing of their delivery. The defendant further proved, that this bill was discounted by the *Western Bank*, and was by them sent to plaintiffs, their agent at *Charleston*, for collection, and was returned to said bank in the following letter. (See letter of 26th September 1840 ante 132.) The plaintiff then gave in evidence the following letter from plaintiffs to the *Western Bank*. (See letter of 7th October 1840, ante 133.) The defendant then proved, that when this draft was discounted, *Charleston* was paying specie, and *Baltimore* funds, including notes of the *Western Bank*, were seven per cent. below specie; that it would cost about one per cent. to transmit specie from *Charleston* to *Baltimore;* that drafts in January 1840, were sold by the plaintiffs in *Charleston*, on the *Western Bank of Baltimore*, at three per cent. discount; that is, $970 in *Charleston* purchased a sight check on *Baltimore* for $1,000. And also proved by *Herman Perry*, that on the 15th January 1840, he bought a draft on *Charleston* in *Baltimore*, at sixty days, at par. The defendant then proved, that there was a great difference between the price of sight and time drafts; and there was no regular rate of exchange from *Baltimore* to *Charleston;* and that one per cent. was a fair rate of exchange on a bill drawn from *Baltimore* on *Charleston;* and further proved by *T. Phenix* that when he discounted said bill, he charged one per cent. over and above the legal rate of interest, as exchange and not as interest or usury. The defendant also proved he had merely endorsed this bill for *Chafee's* accommodation. It is also admitted, that the testimony as to *Chafee's* declarations to *Phenix* was taken, subject to exception as to its admissibility to affect this defendant; but that it was offered in evidence after the evidence offered by the defendant, by *Chafee's* clerks, to prove that they never saw or heard of any such notice, and to show that *Chafee* had never received it.

The defendant then made the following prayers to the court, and the plaintiffs submitted the following modification thereof:

1. That the defendant in this case being an endorser of a bill of exchange, drawn upon a party in another State, and there protested for non-acceptance, was entitled to strict notice of the presentment of such bill and the protest thereof.

2. That such notice is not sufficient if given by a stranger to the bill, but could only be given by one of the parties to such bill, or by a duly authorised agent of one of the parties to such bill.

3. That a notice given by *Mr. Taylor*, unless authorised by some of the parties to said bill to give the same, was not sufficient notice.

4. That the evidence given by *Taylor* is not sufficient to shew that strict notice was given to *Whiteford*, of the protest for non-acceptance of the bill of exchange in controversy in this suit, and that evidence of a waiver of notice is not sufficient to maintain the present declaration, if the jury believe that *Whiteford* received no consideration from *Burckmyer & Co.*, the plaintiffs, or from any other person for said bill.

5. The defendant prayed the court to instruct the jury, that if they believe that a letter leaving *Charleston* by the mail of the 7th January 1840, would have reached *Baltimore* on the morning of the 11th January 1840, before 9 o'clock; and if they further believe that defendant was always a resident of *Baltimore*, then plaintiffs are bound to prove that notice of demand on and refusal of acceptance by the drawee, was given to defendant on said 11th January 1840, or upon the first business day thereafter.

6. That in order to enable the plaintiffs to recover, they must satisfy the jury that a demand of the bill was made of the drawees, and acceptance refused by them, or one of them, and notice thereof sent to the defendant by the first or second mail which left *Charleston* for *Baltimore*, after the demand and refusal of acceptance, or if no notice was sent to defendant from *Charleston* by any of the parties to the bill, nor by the agent of any of them, but the only notice sent from *Charleston* was transmitted to *T. Phenix*, the cashier of the *Western Bank*, then that said *Phenix* or some agent of said bank, or some

other party to the bill, or some agent of such other party, at some time not exceeding a day after the receipt of such notice by said *Phenix,* gave notice of such demand and refusal to defendant, and the burthen of proof is upon the plaintiffs to shew such notice given, and unless the jury are satisfied from the evidence, that notice was given to defendant within one day after the arrival of such notices at the *Western Bank,* plaintiffs cannot recover in this case.

7. If the jury believe that the *Western Bank of Baltimore* were the holders and owners of the bill on which this suit is brought, at the time it was so brought, the plaintiffs cannot recover in this case, although this suit was brought in their names, by order of the bank.

8. That in order to entitle the plaintiffs to recover, they must show either a demand for payment of the bill from the drawee, and refusal by him to accept, or notice of demand and refusal to defendant, or waiver of such demand and notice.

9. If the jury believe that the true rate of exchange between *Baltimore* and *Charleston* was in favor of *Charleston* at the time this bill of exchange was discounted, that the agreement to take, and taking one per cent. for exchange, over and above the legal rate of interest, is usurious, and the said bill is void, and plaintiffs cannot recover in this case.    (Abandoned at the trial.)

10. That all the testimony offered by the plaintiff, with reference to the acts and declarations of *Chafee,* are inadmissible to charge the defendant in this cause.

11. That there is no evidence in the cause to shew a proper legal notice of protest for non-acceptance, to the defendant in due time.

12. That in order to entitle plaintiffs to recover, there must be evidence of a demand of payment of the bill, when the bill in controversy became due, and notice of the refusal to pay the same.

13. If the *Western Bank,* at the time they took the bill of exchange now in controversy, did ask and take a higher rate of exchange than was currently paid for good bills of exchange

on *Charleston*, it is usury, and the plaintiffs are not entitled to recover.    Abandoned at the trial by counsel.

14.  That the protest offered in evidence, is no proof of notice of presentment, for non-acceptance and refusal to accept having been duly and legally sent from *Charleston* to *Baltimore*.

### *Qualification by Plaintiff of the Defendant's sixth Prayer.*

"But the fact that such notice was given to the defendant, may be established by circumstantial or presumptive evidence, as well as by direct proof;  and the protest for non-acceptance offered in evidence, the proof by the witness *Taylor*, of the actual delivery of certain notices of protest to the defendant, as stated by said witness, and the conversations of the defendant with the witness *Phenix*, as proved by said *Phenix*, furnish evidence from which the jury may infer, that such notice as is above mentioned, was given to the defendant."

The plaintiff then prayed the court to instruct the jury, that the proof offered by the plaintiff, of the delivery by the witness *Taylor*, at the residence of *Chafee*, the drawer of the notices of protest originally taken to the defendant, and of the acts and statements of the said *Chafee*, in relation to the same, as proved by the witness *Phenix*, being offered in reply to the proof offered by the defendant, by the witnesses *Benson* and *Brummell*, to shew that such notices never were delivered to, or received by said *Chafee*, is admissible to prove that said *Chafee* did receive said notices, and that they were notices of protest for non-acceptance, relating to the bill sued on;  and that such proof is evidence in connection with the protest for non-acceptance offered in evidence, the proof by the witness *Taylor*, of the actual delivery of said notices in the first instance to the defendant, as stated by said witness, and the conversations of the defendant with the witness *Phenix*, as proved by said *Phenix*, from which the jury may infer, that such notice as is mentioned in the plaintiff's fifth prayer, was given to the defendant;  or is at least evidence from which the jury may infer, that said notices, which according to the proof

of the said *Taylor*, the witness, was originally taken by him to the defendant, and afterwards by the defendant's directions, were taken by said witness, and left at the residence of said *Chafee*, were notices of protest for non-acceptance of the bill sued on in this case, or that it is at least, evidence to confirm the testimony of the witness *Taylor*.

Whereupon the court (PURVIANCE, A. J.) granted the first, second, third, fifth and eighth, prayers of the defendant, and the sixth with plaintiff's qualification, and also granted the plaintiff's prayer, and *refused the other prayers of the defendant*. The defendant excepted.

The verdict and judgment being against the defendant, he appealed to this court.

The cause was argued before STEPHEN, DORSEY, CHAMBERS and SPENCE, J.

By WALSH and RICHARDSON for the appellant, and
By McMAHON for the appellee.

CHAMBERS, J., delivered the opinion of this court.

Of the numerous questions arising on this record for our decision, the first is whether the testimony which the defendant proposed to offer, and to which the plaintiff objected, as stated in the first bill of exceptions, was admissible. It is certainly a sound rule, that before you can discredit a witness by proof of his having made statements at variance with his testimony, you must first afford to the witness whom it is intended to impeach, a full and fair opportunity to recollect, by calling his attention to dates, names or other attendant circumstances connected with the matter about which he is to be charged, to have made different statements. But in the matter of the testimony which it is proposed to contradict, or in the manner of arriving at it, the party will not be allowed to violate any positive law of evidence. It is not permitted to ask a witness any fact which fancy or idle curiosity may suggest, for the purpose of disproving it by another witness; nor is it proper to ask a witness with the same view, of a fact proper in

itself to be proved in the cause, if the only knowledge of such fact has been obtained through a source which the rules of evidence do not recognise as competent.

It is an unbending rule of evidence, subject to very few and well defined exceptions, that a party cannot offer in evidence his own declarations in relation to the subject in controversy; and to ask a witness to repeat what a party interrogating him has said, although such interrogatory be accompanied with a declaration of his purpose to contradict the answer, might often lead to the introduction of evidence as effectually destructive of this rule as if no such purpose were avowed as a motive for it. In the testimony proposed to be given and which the court below allowed to be asked, were certain declarations of the defendant himself in relation to the fact then in controversy. We think the court properly refused to permit the defendant to give evidence of his own declarations that he was not liable, and had not received notice of protest, nor do we think, as one of the counsel has suggested, that where a question is proposed to be asked of a witness, which involves several distinct members, the court is bound to select from the question such members of it as might be admissible if unaccompanied by others with which it is connected, and say that such particular portions of the testimony are proper.

The second exception raises the question whether the plaintiff's letter of 7th October 1840, was admissible evidence. By an agreement of counsel, it is admitted the letter was written and addressed by the appellees, but there is no proof of the *time* when it was written; none that it was received by the person to whom it was addressed, or that it did in fact enclose the bill of exchange. Waiving however these objections we cannot distinguish between the statements reduced to writing in this letter, and the same statements by the same persons at the same time and under similar circumstances, made verbally. If the person to whom the letter was addressed had been called to prove that the appellees, plaintiffs below, had made to him the same declarations verbally, it would have

been in direct violation of that admitted rule of evidence which prohibits a party from testifying in his own case; and in this case the facts shew that it was made evidence in despite of another principle, which requires the best evidence the nature of the fact affords. *T. Phenix*, the person to whom the letter was addressed, by whom the note was received if sent with the letter, was a witness in the cause, and was competent to prove all that the letter itself is said to have been designed to prove. We think the letter was not therefore admissible.

The third exception has been abandoned, and we therefore have only to affirm the opinion expressed in it.

We differ with the court below in the opinion expressed in the fourth bill of exceptions. *Chafee* was a competent witness in the cause, and his testimony upon oath was better evidence for any purpose, or in any view, than the testimony of his declarations derived through a third person. The appellees' counsel endeavored to evade the force of this objection, by insisting that *Chafee* must be regarded as the agent of the appellant, the defendant below, who for that reason could be charged upon his agent's admissions. If an agency be established, it is generally true that an admission of the agent while in the execution of his agency, *is* admissible to charge his principal. But the only authority which by possibility can be claimed for the witness *Chafee*, was an authority to receive the notice of protest sent to appellee.

Admitting for the argument, that there was such an authority, his declarations made at the bank at a subsequent time, and in reference, not to the notice to *appellant*, but to *himself*, could not be regarded as being in the execution of such authority.

In the fifth exception, the court below was called upon by the appellant, the defendant below, to instruct the jury on fourteen different points. The court gave instructions on five of these points as asked for. To one of them the appellee, plaintiff below, proposed a modification, and it was given with the modification annexed. One instruction was asked for by the appellee, which was given.

The appellant's counsel has rightly abandoned the two points raised on the question of usury, and the remaining questions present themselves for decision.

The first in order contains two distinct propositions of law, one that *Taylor's* testimony was not sufficient to prove notice of protest; the other that proof of waiver of notice would not support the action if the appellant received no consideration.

To entitle an appellant to a reversal for error in instructions, he must make good all the propositions contained in his motion, however numerous they may be. Hence the prudence of presenting a single and explicit point to the consideration of the court.

If the first of the two propositions before us had been presented singly, we should say it was sustained. The amount and importance to the community of negotiable paper, has occasioned a system of law as applicable to it, peculiar in many respects. Its apparent strictness has been found by long experience a necessary preventive to serious mischief. The necessity which introduced it, continues to demand an exact conformity to its terms. In no department of this system is there required more unyielding compliance with its rigorous demands, than in regard to notice of protest. Certain technical rules as to the time and manner of serving it have been adopted, and no question about consequent loss or otherwise, or about abstract notions of justice or equity, can be started with the view to exempt a party from their observance. It is admitted that it was necessary in the present case, that notice of protest should have been served on the appellant not later than on Monday, the 13th January 1840; on the hypothesis most favorable in this respect to the appellees; that is, assuming that notice of protest was addressed under cover to *T. Phenix.* The necessity for plain and satisfactory proof as to the time of service has always been insisted on. Certainly it may be proved by circumstantial testimony, but the circumstances must point not to notice at *some* time, but to notice on the day when the party had a right to expect and receive it. In 1 *Stark. Rep.* 314, the proof was on *one of two days,* but the court held it

not sufficiently certain. Here *Taylor* says it was "some time in January."

It has been urged that the testimony of one witness cannot be selected from a mass of testimony with which it is connected, and be made the subject of such an instruction. It well may, and doubtless often does happen, that a fact is satisfactorily proved to the jury by the testimony of several different witnesses, each testifying to distinct parts of a transaction, when the evidence given by either one, would not prove the fact. Still we do not perceive the propriety, or principle or authority, of restraining a party from attacking the evidence of either of the several witnesses as to its sufficiency. He may be able to impeach, contradict or explain the testimony of the others, and thus make it quite impossible to have the legal effect of the one witness declared by the court. If he fails to contradict it in any part, or if the opposite party apprehends mis-conception on the part of the jury from such an instruction, the effectual remedy is at hand, by asking an instruction on the whole testimony taken together.

But although this first proposition is tenable, the court correctly refused to give the fourth instruction asked for, because the second proposition involved in it could not be sustained. We hold it clear, as well upon principle, as from adjudged cases, that a party may waive the privilege of claiming notice of protest, as he may any other right which the law has secured to him. The authorities cited in the argument shew that this is regarded as settled law elsewhere, and in the late case of *the Farmers Bank vs. Duvall,* 9 *G. & J.* 31, this court assumed such to be the law in *Maryland,* although the objection was urged then, as it is now, that the declaration expressly alleged notice.

The next question we are to consider in this exception is, whether there be any thing of which the appellant can complain in reference to the giving of the sixth of the instructions asked for by him. We hold it to be the privilege of a party to raise any question of law arising out of the facts of the case, and to demand the opinion of the court distinctly upon

it. If the opposite party believes that other facts not embraced in the hypothesis assumed, are properly calculated to justify an application for other and different instructions, he has the equal privilege of asking an opinion on the additional facts, but not the privilege of controling and modifying the hypothesis of his antagonist.  To allow this, would often defeat a most important right.  The illustration may be found in the case before us.  Assuming, as the appellant's sixth instruction does, that the appellee would rely on proof of presentment and notice of non-acceptance, and not on a waiver of notice, it is not denied that it contained the law of the .case, correctly asserting that notice must be proved as therein stated, and that the burthen of proof was upon the plaintiff in the cause.  The assertion of this proposition was of no sort of importance to the appellant, unless he could satisfy the jury, that the plaintiff below had failed to exhibit the proof which the court declared it to be necessary for him to produce.  He thereby virtually denied the existence of such proof.  It would therefore be manifestly suicidal for him to subjoin to the instruction asked for, the further opinion of the court that the jury might, in the facts enumerated in the modification, find the proof required.  In effect it makes the appellant to ask the court to say to the jury, "the plaintiff cannot recover without a certain description of proof, but the facts in evidence may be regarded as such proof."  No party can be coerced into such an attitude.  If the proposition asked for is not justified by the evidence, or is not in accordance with the court's opinion of the law, they may refuse it altogether, or they may state in what respects they dissent from it, but the opposite party has not the right to annex modifications to it against the consent of the party moving it. Although the exception does not explicitly state this as one of the grounds on which it was taken, yet the generality of its terms will include this as well as every other ground of complaint. We think the court were wrong therefore in declining to give the sixth instruction without the modification. We think too, that the language in which that modification was expressed, was calculated to lead the jury to a conclusion which

the court certainly could not have designed to influence. "The proof by the witness *Taylor* of the *actual delivery* of certain notices of protest to the defendant," these expressions might readily be regarded by the jury as evincive of a decided opinion that *Taylor* had proved an actual delivery of notice to defendant, and yet it is very manifest that this was one of the contested facts in the cause, upon which of course the jury should act without the slightest bias from the court.

In the seventh instruction, the court informed the jury that if the suit was brought in the name of the plaintiffs below by order of the *Western Bank*, it was not sufficient to defeat the action to shew that the bank was the owner and holder of the note at the time the suit was instituted.

Assuming the language used to import the *entire* and *exclusive* interest in the bill and its possession, we do not concur in that opinion. The authorities produced by the appellee's counsel, and the principles deduced from them are not denied. Possession of a note endorsed in blank, will enable the party having it to maintain suit, except *mala fides* be proved. Courts will never enquire whether a plaintiff sues for himself or as trustee for another; nor into the right of possession, unless on an allegation of *mala fides ;* and blank endorsements may be filled up at the moment of the trial. None of these propositions can govern this case. It is a principle of universal application, that actions at law are to redress wrongs or enforce rights. The quantum of the injury or the value of the rights may not be weighed, but to complain of an injury inflicted, or a right violated, when that injury was exclusively inflicted on another, or the right exclusively the property of another, without any interest in the plaintiff, would certainly be an anomaly in the law. None such is found in the particular department we are considering. If a bill has been transferred by endorsements, all of them in full, it can only be sued on by the special endorsee. *Story on Bills*, 230, 231, *sec.* 207, 208. Why is it so? Certainly for the reason that as no interest in such a bill can pass by delivery alone, the entire interest in legal contemplation remains in the last endorsee, and all others are strangers in interest.

A bill payable to bearer, or a bill payable to order and endorsed in blank, will pass by delivery, and bare possession is *prima facie* evidence of title; and for that reason possession of such a bill will entitle the holder to sue. The law is not changed by any consideration of the character of parties as *principal* or *agent.* If an agent receive a bill with all the endorsements in full, and the last in full to his principal, the agent cannot sue in his own name; or if the endorsements are in blank, and he were to fill it up to himself or his principal, it could not be sued on in the name of a stranger. Some interest must appear. It may be said that where all the endorsements are in full, the last endorsee may sue for the use of the actual holder. True he may, and this confirms the principle we assert, the endorsee being the *legal* plaintiff.

In the case before us the appellant, the defendant below, claimed that by the evidence, it appeared that the plaintiff in the action had received the bill merely as agents for the *Western Bank,* to whom they had returned the bill prior to the suit, and that the bank continued to be the owners and holders of the bill. The case of *Clark vs. Pigot,* 1 *Salk.* 126, has much analogy to the present in principle. There *Clark* having a bill payable to himself or order, put his name upon it, leaving a vacant space above, and sent it to his friend J. S., who got it excepted. Upon suit brought by *Clark* against the acceptor, it was objected that J. S. should have brought suit and not *Clark.* It was held that J. S. might have made himself endorsee by filling up the blank to himself, and then the property in the bill would have passed to him, and he alone could have maintained the action; or he might act as servant to *Clark,* (of which his failure to fill the blank was regarded as proof,) and thus leave the property of the note and the right of action in *Clark.* It would seem that striking out the name of *T. Phenix,* and returning the bill by the appellees to the *Western Bank,* would be at least as strong evidence of their acting as agents for the bank in the present case. The legal interest in such a bill, payable to order with full endorsements, can pass *only* by endorsement, and the person holding it, though for full value, has

but an equitable interest, which the court will protect to the same extent as it does the equitable interests of those for whose use actions are instituted upon choses in action not negotiable.

The decisions in this court have been in perfect consistency with these views.

In *Hudson vs. Goodwin*, 5 *H. & J.* 115, it was held that a plaintiff was not entitled to recover on a promissory note payable to order, because the endorsement was in blank, although he might have filled it up at any time before verdict. The same point was ruled in *Day vs. Lyon*, 6 *H. & J.* 140.

In *Kiersted vs. Rogers*, 6 *H. & J.* 282, it was held that a blank endorsement might be filled up by the holder at the time of the trial; that if filled up and made payable to himself, the holder *must* sue as endorsee, but if not filled up he may sue in the "name of the endorsee," meaning of course, *for the use* of the holder. In that case the endorsements were in full, and the last of them to the plaintiff, who had endorsed their names in blank, but had retained the bill, or at all events held it at the institution of the suit; and the court say the plaintiff had not parted with any interest in the bill by the act of endorsing it in blank.

The act of 1825, ch. 35, passed since these cases were decided, provides that no judgment shall be set aside because of the endorsement being in blank, and in effect gives to a plaintiff all the advantage from a blank endorsement which he could derive from an endorsement in full, so far as his right of action is effected. Any holder therefore with a blank endorsement, may now sue in his own name, but the act of 1825 cannot be construed to extend the right of action to one who has no interest in the bill, either as holder or owner.

In *Bowie* use of *Ladd, vs. Duvall,* 1 *G. & J.* 175, the note was given by *Duvall* to *Bowie,* and by him endorsed in full to *Ladd.* The suit was in the name of *Bowie* for the use of *Ladd.* The court after referring to the statute of 3 & 4 *Anne ch.* 9, which put promissory notes and bills of exchange on the same footing, say, "when a bill of exchange is endorsed in full, all the legal interest is transferred to the endorsee, and he *alone*

is qualified to maintain a suit." And it was held accordingly, that *Ladd* should have been the legal plaintiff, and could not support the suit in the name of *Bowie* for his use. Yet if *Ladd* had endorsed his name in blank, and transferred the note to a third person, there can be no doubt, without reference to our act of 1825, that such third person, being the holder of the note, might have sued in his own name and have filled up the blank endorsement at the trial, making it payable to himself, or without filling the endorsement might have sued in the name of *Ladd* for his use. But that in such a case as the one last mentioned, to wit, a blank endorsement and delivery of the note by *Ladd* to a third person, a stranger not having any legal interest in the note, either by the terms of the endorsement or by the possession of the note, could have maintained the suit in the name of such stranger, we cannot agree. And such is the hypothesis of the instruction asked for in the case at bar, and which for the reasons assigned, we are of opinion the court should have granted.

The tenth instruction was upon the admissibility of the acts and declarations of *Chafee*, in regard to which we have given our views in discussing the fourth exception. We will only add, that there appears to be no *act* of *Chafee*, in evidence, except his going to the bank, and we have treated the exception therefore as if it were an objection to his declarations. If any act of his affecting in any manner the issue in the cause had been the subject of the exception, we should consider it as properly admissible by any competent witness, as any other fact.

The court properly refused the eleventh instruction asked for. It is a settled principle that the court will not instruct the jury in such unequivocal terms, if there be any evidence whatever tending to prove the issue.

The declarations of the appellant to *T. Phenix* had been given in evidence; they were to be weighed by the jury. The counsel seemed to admit, and the authorities certainly shew, that admission of notice is evidence on which the jury may find notice in due time and in due form. Vide 7 *East.* 237. 28

*Eng. Com. Law,* 401. 33 *ditto,* 337. 41 *ditto,* 427 *and* 790. 1 *Leigh,* 448. And 23 *Wendel Rep.* 379, *Tebbets and Pearce vs. Dowd.*

We think the court below properly refused the twelfth instruction. It can no longer be considered an open question, whether an action will lie upon notice of presentment and non acceptance of a bill of exchange, without waiting for demand of payment at the maturity of the bill. The holder is not bound to present a bill, payable on a certain day after date, for acceptance; unless indeed he be an agent to get it accepted or to collect it. 5 *Dow & Ryl,* 374, *Van Wait & Woolley.* 3 *Barn & Cres.* 439. *Chit. on Bills,* 300. If it be presented and acceptance is refused, it is dishonored and immediate notice must be given to the parties who are to be charged. 1 *Peters, S. C. Rep.* 25, *Bank of Washington vs. Triplet & Neale.* 2 *Ib:* 170, *Townley vs. Sumrall.* That the drawer or endorser may forthwith be sued upon the protest without waiting for demand of payment, is abundantly settled by the long list of authorities cited in argument, to which others might be added if there were any conflicting decisions, which we do not find to be the case. Vide *Story on Bills,* 367, *sec.* 21, and the authorities there cited.

In the case in the late General Court, reported in 1 *H. & J.* 187, *Phillips vs. McCurdy,* the neglect to give notice of the non-acceptance was a sufficient ground on which to sustain the opinion of the court.

The fourteenth instruction presents the question whether the protest is of itself any proof that notice had been "duly and legally sent from *Charleston* to *Baltimore.*"

The act of 1837, ch. 253, was obviously designed to extend the credit, which by the courtesy of commercial nations had previously been given to the certificate of a notary public. That certificate had been received as *prima facie* evidence of the presentment by him for acceptance or payment, and of his protest of the bill for non-acceptance or non-payment. This was of course on the ground, that in every commercial community this officer would be worthy of faith and credit, or at least would be so considered until the contrary was made appear by disproving his assertion. The act of Assembly has wisely car-

ried out the same presumption by saying first, that this doctrine should so applied thereafter as well to inland as to foreign bills or notes, and secondly, that such protest should be *prima facie* evidence that notice has been sent or delivered in the manner therein stated. This act of Assembly is to be so construed, as to effect the obvious purpose of its enactment. It is not necessary that notice be sent by mail. The legal presumption is, that where there is a regular daily mail, it affords an early conveyance and a safe one, and a party is not bound to use one more expeditious or certain, but he *may* do so, and surely it would be no cause of exception to the regularity of the notice, that it was received in advance of the mail. Neither is it necessary, however it may be prudent, that the notice if sent by the mail be enclosed to the address of the person to be charged. If a party be willing to hazard the receipt of notice by his correspondent, and the due attention of the correspondent to the service of the notice, he must abide the result. But if the party to be charged receive the notice in due time, he cannot object to the means which the owner or holder of the bill has employed. The act of Assembly seems so to regard the matter, where it puts the case of a protest which "shall state that notice has been sent or delivered to the party or parties to such note or bill, and *the manner* of such notice." This protest states the "notices were forwarded to the drawer and endorsers under cover to *T. Phenix, &c.*" The notices were sent to the *drawer* and *endorsers;* the *manner* of sending them was by enclosing them under cover to *T. Phenix, Baltimore.* If therefore the name of *Phenix* had never been upon the note, as by the admission now put on the record is found to have been the fact, we should hold there was no force in the objection, that the notice was not sent to the parties, considering the act of 1837 to apply to a case in which a notary shall certify that he has sent notice to a party under cover, addressed to a third person. In this case there was evidence before the jury tending to shew that the appellees were acting as agents for the bank without any actual interest in the bill, and the appellant has based some of his motions for instruction on this theory.

Consistently with this assumption, it was quite in conformity with their duty as agents, to send, or cause the notary to send, the notices to the principal. *Vide* 3 *Bos. & Pul.* 599, *Haynes vs. Birks.* and 8 *Barn. & Cres.* 387, *Firth & Thrush.* This would make a clear case within the act.

It is true that in these cases, the entire object designed by the act is not effected, to wit, the service of the notice on the parties to be charged, or the equivalent fact of putting a notice separately addressed to each into the post office, but that result ensues, because the parties have not availed themselves of the advantage the act gave them. Their neglect to do so, will require the further proof to the jury, that the person to whom the notary enclosed the notices, had served them in due time. This instruction does not meddle with that link in the chain of testimony; it is not made a question whether notice was duly sent to the party to be charged, but to *Baltimore,* and that question was in our opinion properly decided by the court.

The only remaining matter for consideration, is that involved in the instruction given at the instance of the appellees, and in regard to most of which, our views have been already expressed.

In this bill of exception, it is carefully stated that *Chafee's* declarations were offered in reply to the testimony of other witnesses, but we cannot agree that this obviates the difficulty which is fatal to their admissibility. If the facts were as *Chafee's* declarations stated them to be, it was competent and necessary to call him to prove them, and the rule which excludes hearsay testimony, is as obligatory in repelling and discrediting testimony, as in confirmatory. The court therefore erred in presenting such testimony to the jury as the foundation, in any degree, upon which to find a verdict. A party may group into one instruction as many and as complicated facts as he pleases to assume his testimony will prove, and ask the court to instruct the jury on the legal result of that mass of facts, but if amongst the enumerated facts there be such, as whether from a total failure of evidence tending to prove them, or from having been ruled out of the cause, or for other rea-

son, it is not competent for the jury to act upon, he must fail in his application. And if on appeal, this court shall determine any fact in such hypothesis to have been improperly allowed to go to the jury, the decision of the court below granting such prayer must be dissented from. We find in this instruction also, the objectionable manner of putting the testimony of *Taylor* before the jury, which has been alluded to when speaking of the "modification" to the sixth instruction. We should feel ourselves compelled to dissent from the opinion of the court below as expressed in this instruction, for the reason that they were authorised to find one of three alternate and distinct propositions of fact, without saying which. The instruction is, that the jury may infer that "notice was given to the defendant, *or at least* that the notices taken by *Taylor*, by direction of defendant to *Chafee's* residence, were notices of protest for non-acceptance of the bill sued on," or at least might regard it as "evidence to confirm *Taylor*." The great point in contest, was due notice, *vel non*. If the evidence was legally sufficient to find for the plaintiff on that point, and the jury believed it, they might find accordingly, and the instruction thus covered the whole case.

The second assumes that the testimony might not be legally sufficient to authorise a verdict on the point of notice to defendant, but it would authorise the jury to identify the paper spoken of by *Taylor*, and which being identified, formed one item in the proof of notice, but still left open the important question of *when* that notice was served. The third proposition is, that the evidence may be regarded to confirm the testimony of *Taylor*. But assuming *Taylor* to be sustained, and the jury satisfied that *Taylor* was perfectly accurate in what he had said, yet he had not said that he gave due notice to the defendant, and the jury might believe he had served *a notice*, and that it was of the dishonor of the bill sued on, and yet consistently with this, they might think it was not proved to be on the 11th January. We do not think that such an alternate series of propositions should have been presented to the jury with an opinion that they might find some one of them. It

would be impossible for them to ascertain whether they were thereby authorised to find the first or the second. The sole purpose of instructing the jury, is to aid and enlighten them in their duty, so far as it is competent for the court to assist them. If counsel present to the court a complicated and involved statement which it will be difficult for the jury to understand distinctly, it will be a sufficient ground upon which the court should refuse to give a direction in the terms asked for. It is much to be desired, that propositions for the court, or for the jury, should be as precise and distinct as possible. Few instances will be found in which a transaction however ramified in its details, may not be reduced into something like elementary and distinct parts or points, each readily to be comprehended by minds of ordinary intelligence.

It may be proper to remark, that amongst the errors we have noticed, there are some, which of themselves would not have been deemed of sufficient influence in the decision of the cause below, to require this court to reverse the judgment and send the case back; but there are others of such substantial importance as to induce us to reverse the judgment and award a procedendo.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.