JOHN M. JAMESON and wife *vs.* C. H. HALL and
LIZZIE M. HALL, his wife, and ALFRED H. AMES.

*Inadmissible Evidence.*

On the trial of issues sent from an Orphans' Court upon a caveat to a will, it
was HELD:

1st. That it was not competent for the caveators, for the purpose of showing
that they never recognized the validity of the will in question, to prove by
one of the caveators that he and another of the caveators, on the day of the
interment of the deceased, after the interment, had a consultation, and
determined to contest the validity of the will, and to employ counsel to
do so.

2d. That it was not competent for the caveators to introduce evidence to show
that the manner of one of the caveatees, while accompanying the corpse of
the deceased for interment, was jovial—more so than was, in the opinion of
the witness, in keeping with the occasion.

3rd. That it was not competent for the caveators to prove that on the day
after the decease of the testator, one of the caveatees, in whose house the
corpse was at the time, "was telling anecdotes, such as to create merriment,
and such as were not fit to be repeated by the witness in the presence of
ladies."

APPEAL from the Circuit Court for Prince George's
County.

On the 8th of March, 1871, the appellee filed in the
Orphans' Court of Prince George's County a petition,

in which they alleged that a certain John C. Ames, of said county, departed this life some time in the month of January, 1871; that Lizzie M. Hall was the sister and Alfred H. Ames the brother of the deceased John C. Ames, and were his only heirs at law and personal representatives; that on or about the 28th of January, 1871, a certain John M. Jameson, exhibited a certain paper writing in the aforesaid Orphans' Court, purporting to be the last will and testament of the said John C. Ames, by which he devised certain property therein described, to Margaret J. Jameson, wife of the said John M. Jameson, and named no executor or executors; that said paper writing was admitted to probate as the last will and testament of the said John C. Ames, but without any of the near relatives of the deceased being in attendance, and without any notice having been given, or summons issued to the petitioners, and without any notice in the public papers or otherwise. The petition further alleged that the said paper writing was not the last will and testament of the said John C. Ames, and that at the time he executed the said paper writing he was not of sound and disposing mind, memory and understanding, and capable of executing a valid deed or contract, and that the same was procured through the fraud and undue influence of the said John M. Jameson.

The prayer of the petition was that the probate of the said paper writing might be revoked, and that the petitioners might file a *caveat* to the probate. On this petition the Court passed an order revoking the probate of the said paper, unless cause to the contrary was shown on or before a day therein named, &c., and directing a summons to issue to John M. Jameson and wife, requiring them to appear and answer.

John M. Jameson and his wife appeared, and filed their joint answer under oath to the petition. They denied that the said last will and testament was admitted

to probate without notice to the petitioners, and stated what notice the relatives of the deceased had of the probating of said will, and the circumstances under which it was probated, filed and recorded in the office of the Register of Wills of Prince George's County. They also denied and indignantly repelled the charge in said petition, that they, or either of'them, exercised any fraud or undue influence over the decedent, so as to procure the making of said last will and testament by the said testator. They further denied that the said John C. Ames was of unsound mind, memory and understanding when he made said last will and testament, and averred most positively, that he was of sound and disposing mind, memory and understanding, and perfectly capable of executing a valid deed or contract. They further stated in detail the circumstances under which the said last will and testament was prepared and executed; that it was written by a draft of a will prepared by the testator himself, &c., &c.

Upon the petition of the caveators, the Orphans' Court directed the following issues to be sent to the Circuit Court for trial:

1st. Whether the instrument of writing, purporting to be the last will and testament of John C. Ames, dated the 13th day of January, in the year 1871, was executed by the said John C. Ames as his last will and testament?

2d. Whether the said instrument of writing, purporting to be the last will and testament of John C. Ames, and dated the 13th day of January, in the year 1871, was executed by the said John C. Ames as his last will and testament, when he was of sound and disposing mind, and capable of executing a valid deed or contract?

3d. Whether the instrument of writing, purporting to be the last will and testament of John C. Ames, dated the 13th day of January, in the year 1871, was executed by the said John C. Ames under the influence of sugges-

tions, importunities and undue persuasions of John M. Jameson or Margaret J. Jameson, the wife of said John M. Jameson, or of some other person or persons, when his mind, from its disordered, diseased and enfeebled state, was unable to resist the same?

4th. Whether the execution and making of the said alleged last will and testament of the said John C. Ames was his own voluntary act, to which he was induced without the exercise of an undue influence by the said John M. Jameson or Margaret J. Jameson, or both of them, or by any other person or persons whatever; and whether he was prevented from making a disposition of his property, according to his own will, by the said John M. Jameson or Margaret J. Jameson, or both of them?

5th. Whether the execution of the said paper-writing by the said John C. Ames was procured by fraud or misrepresentations, or undue influence or persuasion of the said John M. Jameson and Margaret J. Jameson, or either of them, or by any other person or persons whatsoever, acting by the direction of them or any of them?

6th. Whether the said John C. Ames, in the situation in which he was placed, and the circumstances surrounding him at the time when the said paper-writing was executed by him, was capable of withholding his assent to the same, and of acting in the disposition of his property, free from the undue influence of the said John M. Jameson and Margaret J. Jameson, or either of them?

The caveatees also prayed for the following issue, which the Court granted:—

Whether the said John C. Ames, in the proceedings mentioned, departed this life *devisavit vel non?* This issue was subsequently stricken out by consent.

*First Exception.*—The caveatees having proved the due execution of the paper-writing, purporting to be the last will and testament of John C. Ames, further proved that the day after the death of the testator, it being the 19th

of January, 1871, the said paper-writing was handed to the said Alfred H. Ames, one of the caveators, at the house of the caveatees, where the testator died, and was read aloud by him in the presence of certain persons named, and that after the reading of the will, a discussion arose among the parties as to where the said will should be probated, and it was suggested by John M. Jameson and Thomas Perry, that it should be probated and recorded in the office of the Register of Wills of Prince George's County, and that after such discussion, the suggestion was *acquiesced* in by the said Alfred H. Ames, who handed the said will to the said Jameson, and requested him to attend to the probating, and the recording of it in the office of the Register of Wills of said County.

Whereupon the caveators by their counsel, stated to the Court that they were willing that the jury should find for the caveatees upon the first and second issues, and would offer no proof on their part in support of the same, and proceeded to offer testimony to support the third, fourth, fifth and sixth issues on their part. And for the purpose of proving that the caveators had never recognized the validity of the said paper-writing, proposed to prove by Alfred H. Ames, one of the caveators, and brother of the deceased, "that on the 20th day of January, 1871, after the interment of the deceased, he and C. H. Hall, another of the caveators, and a brother-in-law of the deceased, had a consultation, and determined to contest the validity of the will, and to employ counsel to do so." To the admissibility of this evidence the caveatees objected, but the Court (MAGRUDER, J.,) overruled the objection, and permitted the testimony to be given to the jury. The caveatees excepted.

*Second Exception.*—In the further progress of the trial, the caveators proved by Alfred H. Ames, that he and the said John M. Jameson rode in a carriage together, on the

20th of January, 1871, accompanying the corpse for interment, to Washington City; and then the caveators, proposed to ask the following question: "How the said John M. Jameson deported himself on the way to Washington, and what was his manner?" To which question the caveatees objected, but the Court overruled the objection and allowed the question to be propounded to the witness; in answer to which question the witness replied, "That his manner was jovial—more so than I thought was in keeping with the occasion." To the admissibility of this testimony the caveatees objected, but the Court overruled the objection and permitted the evidence to be given to the jury. The caveatees excepted.

*Third Exception.*—In the further progress of the trial, the caveators proved by one Thomas Perry, that the day after the decease of the testator, and when the corpse was in the house of the said John M. Jameson, the said witness and several other gentlemen, were together in the said house in conversation, (it being the 19th of January, 1871,) and the caveators by their counsel then asked the following question: "What was the manner of John M. Jameson on that occasion?" To which question the caveatees objected, but the Court overruled the objection and allowed the question to be propounded to the witness; in answer to which question the witness replied, "That the said John M. Jameson was telling anecdotes, such as to create merriment, and such as were not fit to be repeated by the witness in the presence of ladies." To the admissibility of this testimony the caveatees objected, but the Court overruled the objection and permitted the evidence to be given to the jury. The caveatees excepted.

The verdict of the jury was for the caveatees on the first and second issues, and for the caveators on the third, fourth, fifth and sixth issues. Whereupon the caveatees filed motions for a new trial, and to set aside

the verdict, with the reasons in support thereof. The Court overruled the motions, and the caveatees appealed Three exceptions were taken by the caveatees to the ruling of the Court, in regard to these motions, but as they were not reviewed by this Court, it is deemed unnecessary to set them out in full.

The cause was argued before BARTOL, C. J., STEWART, BOWIE and ALVEY, J.

*C. C. Magruder, Jr.,* and *C. C. Magruder,* for the appellants.

The evidence, to the admission of which the first exception was taken, was inadmissible under the issues in the case, or to effect the purpose as stated, for which it was introduced. The acts and declarations of a party are never admissible in one's own favor, except in well defined cases. The permitting the testimony to be given to the jury was in violation of the sound maxim of the English law: "*Nemo testis esse debet in propria causa,*" a principle often recognized and approved by the decisions of this Court. *Whiteford vs. Burckmyer and Adams,* 1 *Gill,* 140 ; *Hagan vs. Hendry,* 18 *Md.,* 177 ; *Nusbaum vs. Thompson's Exc'rs,* 11 *Md.,* 557 ; *Cecil vs. Cecil,* 20 *Md.,* 153 ; *Parks vs. Parks, et al.,* 19 *Md.,* 323 ; *Friend, et al. vs. Hamill,* 34 *Md.,* 307.

This proof was not offered under the pretense or for the purpose of explaining any act of the caveators of which it could be considered a part, or which occurred in the presence of the caveatees, and was therefore, in view of all the principles of evidence, inadmissible. The consultation referred to, took place after the interment of the testator, and was inadmissible under any of the known principles of law controlling the cross-examination of witnesses or the allowing of rebutting proof.

The second and third exceptions present the same questions as to the propriety of the interrogatories propounded, and the responses of the witnesses. The questions asked the witnesses were not allowable.

1st. Because they were not relevant to the issues before the jury, nor calculated to evoke any proof pertinent to any of the issues the jury were empanelled to try. 1 *Greenleaf on Evidence, sec.* 51; *Marshall vs. Haney,* 9 *Gill,* 251.

2nd. Because the replies of the witnesses were calculated to disgrace John M. Jameson, in the minds of the jury, whether he be considered a party or a witness in the case, and was also calculated and tended to prejudice the minds of the jury against him. The law requires the Court to protect parties and witnesses in such cases. 1 *Greenleaf on Evidence, sec.* 460.

*Daniel Clarke,* for the appellees.

It is conceded that conversations, declarations and statements made by a party to a cause, away from and not in the presence of the opposite party, are not admissible in evidence. But the testimony, to the admission of which the first exception was taken, is not covered by, or embraced within this rule.

The proposed evidence *carefully* refrained from giving the conversation which took place between the caveators, or detaling the statements *made* to each other. The evidence, as proposed to be given, dealt only with facts. It was a *fact,* to which Dr. Ames testified, that he and Dr. Hall *had a consultation.* It was a *fact,* that they determined to contest the validity of the will. It was another *fact,* that they determined to employ counsel to do so. It was not proposed to offer in evidence any part of the conversation which they held with each other, in arriving at these *conclusions* of *facts.*

The *movement* or *determination* of the *will* is as much a *fact* as the movement of the hand or foot or head. Under

the Act of 1864, ch. 109, it is competent for the parties to a cause to testify to *facts* which take place out of the presence of the opposite party.

In the case of *Friend, et al. vs. Hamill*, 34 *Md.*, 298, it was not only proposed to introduce evidence that the judges of election had a *consultation*, but the offer went *further*, and proposed to give in evidence the *conversations* which they held together, and what they said to each other. See *Milburn vs. State*, 1 *Md.*, 1 ; *Garner vs. Smith*, 7 *Gill*, 1 ; 1 *Greenl. on Ev.*, sec. 197, *note* 5 ; *Thompson vs. Stuart*, 5 *Littell*, 5, 6.

This evidence was also admissible as part of the *res gestæ* connected with the probating of the will, and for the purpose of explaining and throwing light upon the testimony offered by the caveatees, as to what occurred in reference to probating the will.

The several steps taken in probating the will, embraced some days. The *res gestæ*, where the accomplishment of the thing to be done requires some days, will not be confined to a single point of time, but may extend to the transactions of some days. Here the deceased, John C. Ames, died on the 19th. He was not interred until the 20th. Whatever took place during the interval of time required for the probating of the will, and bearing *upon* it, should certainly be considered as part of the *res gestæ*, connected with probating the said will. *Kolb vs. Whiteley*, 3 *Gill & Johns.*, 198.

The evidence, to the admission of which the second and third exceptions were taken, was pertinent to the issues before the jury, and was therefore properly admitted. These issues were, whether the will was obtained by the fraud and undue influence of John M. Jameson?

When Jameson knew the corpse was in the house, and when he was in company in the same carriage with the brother of the deceased, it would be natural that his manner should, at least, be grave, and in consonance

with the sad surroundings of death. When fraud and undue influence were charged upon him in procuring the deceased to make his will, the manner and bearing of *that* man in the presence, of those from whom his fraud and undue influence had wrested a valuable legacy, were important as bearing upon the issue.

And in this case it proved so. For he was "*jovial.*" He "was telling anecdotes—such as to create merriment." Were not these facts proper to be shown to the jury as bearing upon the questions of fraud and undue influence? Would it not be a fair inference for the jury to make from these facts that Jameson was jovial and creating merriment, when death was at his door, because of the success which his fraud and undue influence had gained in securing the legacy of $3,500? *Davis vs. Calvert, et al.*, 5 *G. & J.*, 269; *Curtis vs. Moore*, 20 *Md.*, 93.

STEWART, J. delivered the opinion of the Court.

This is an appeal from the judgment of the Circuit Court for Prince George's County, upon the trial of issues from the Orphans' Court of that county, growing out of a caveat to the probate of the last will and testament of John C. Ames.

Six issues were sent by the Orphans' Court for trial in the Circuit Court, at the instance of the caveators, and one framed on the part of the caveatees. Two of the first were abandoned at the trial, the caveators consenting that the first and second issues should be found for the caveatees, and the issue of the caveatees was stricken out by consent at the trial. Four of the issues, to wit: 3, 4, 5 and 6, remained for trial.

The appellants here, and caveatees in the Circuit Court, have taken three exceptions to the ruling of the Circuit Court in regard to the admissibility of evidence adduced to the jury by the caveators.

The verdict of the jury being in favor of the caveators upon the 3d, 4th, 5th and 6th issues, the caveatees filed motions for a new trial and to set aside the verdict, with the reasons in support thereof.

The Circuit Court overruled these motions, and the appellants have taken three exceptions to the ruling of the Court in regard to these motions.

From the view we take of this case, it will be unnecessary further to advert to the exceptions in regard to the motions for a new trial and to set aside the verdict, because a new trial will result from our review of the three exceptions in regard to the admissibility of evidence.

We think there was error in the Circuit Court allowing the testimony of Alfred H. Ames, "that on the 20th January, 1871, after the interment of the testator, he and C. H. Hall, both being caveators, had a consultation and determined to contest the validity of the will of the said Ames, and to employ counsel to do so," for the purpose of showing, as was stated by the counsel for the caveators, that the caveators had never recognized the validity of the will in question.

The testimony was offered, in chief, on the part of the caveators, to sustain the issues in their behalf. It was distinct and independent evidence, and not forming a part of any conversation, declaration or act of which proof had been adduced on the other side.

If the other party had proved that Alfred H. Ames, one of the caveators, had acquiesced in the probating of the will, and that fact had been introduced as evidence against both or all of the caveators, that would not authorize them to introduce as rebutting testimony the declarations and acts of the caveators at a different time, to prove that they had never recognized the validity of the will. Whilst their own acts and conduct relative to the matter in issue may be introduced against them, they cannot be admitted in their favor upon their own offer.

It is surely unnecessary to refer to authority for a rule of evidence so well established, and subject to but few exceptions, that the acts and declarations of the parties to a cause cannot be given in evidence in their favor; but see *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 140.

These acts and declarations, which may be regarded as verbal acts, were not parts of the *res gestæ*, as argued by the counsel for the caveators in his brief.

Acts and declarations, indicating the purpose and intention thereof, by whomsoever done or made, are admissible as *res gestæ*, if relevant to the matter in issue; but if they are irrelevant, the declarations qualifying or explaining them will, with the acts themselves, be rejected. 1 *Taylor's Ev.*, secs. 521, 524.

The very first rule in the production of evidence requires that it shall be confined to the point in issue, and if it does not bear directly upon the issue, it must have the tendency to prove it. This excludes all evidence of collateral facts which are incapable of affording any reasonable presumption as to the principal matter in dispute. The admission of such evidence would draw away the minds of the jury from the point in issue, and might excite prejudice, and mislead them; and the adverse party could not refute it, not having notice that such evidence would be proposed. 1 *Greenleaf's Ev.*, sec. 52.

The acts and declarations offered by the caveators, in their first bill of exceptions, were the mere acts and conduct of the parties to the controversy, in regard to their own matters, separate and distinct from the parties opposed to them, forming no part of the *res gestæ* of the main transaction, but were *res inter alios acta*, entirely irrelevant and foreign, so far as we can discover, to the issues before the jury; and it would be clearly against the well settled rules of evidence to permit their introduction.

We cannot perceive any legal ground for the admission of the questions propounded to the witnesses in the second and third exceptions, and the answers thereto, as to the manner and deportment of John M. Jameson, one of the caveatees. There is no doubt great latitude of enquiry is allowable in cases of fraud, or where fraud is alleged; and any fact however slight, if at all relevant to the issue, may be admitted; still there are and must be limits to the range of investigation, and it must be made to appear to the Court that the evidence offered, however remote, has some pertinency to the issue. *Davis vs. Calvert, and others*, 5 *G. & J.*, 270.

We have to determine as to the relevancy of the questions and answers in these exceptions, to the issues for trial, as they have been presented, and we fail to discover that they can have the slightest bearing or effect upon the issues. We think the Circuit Court committed error in admitting the questions and answers in both those exceptions, and its rulings in the 1st, 2d and 3d exceptions must be reversed.

*Judgment reversed*
*and new trial ordered.*

(Decided 20th December, 1872.)