GENERAL COURT, OCTOBER TERM, 1801.

PHILIPS, *et al. vs.* M'CURDY.

ASSUMPSIT upon a foreign bill of exchange, with a count for goods, wares, &c. sold and delivered, and another on an *insimul computasset.* General issue pleaded.

The plaintiffs, at the trial, read in evidence a bill of exchange dated Virginia, 31st of May 1797, and drawn by *Alexander Macauley* on *Caspar Voght,* Hamburgh, for £300 sterling, and payable sixty days after sight to *Hugh M'Curdy,* the defendant, or order, which bill was endorsed by the defendant, payable to *Philips, Oates, & Co.* the plaintiffs. The plaintiffs proved to the jury, that the defendant endorsed the said bill with his own hand, on the 31st of May 1797, and paid and delivered the same to *John Wilson,* (who was the agent of the plaintiffs,) for and on account of the plaintiffs, in discharge of a debt due from him the defendant to them, they being foreigners and British subjects, then and still residing in Great Britain; and that the defendant then was, and still is a citizen of the United States, and of the state of Maryland, residing and using merchandize in the city of Baltimore. That the said *Wilson* remitted the said bill to the plaintiffs in Great Britain, on the 8*th of July* 1797, and that it was received by them on the 9*th of August* 1797, and by them remitted to *Caspar Voght,* of Hamburgh, the person upon whom the said bill was drawn. That the said bill was protested for non-acceptance on the 12th of September 1797, and is noted thereon on that day for nonacceptance; and it was also protested for nonpayment on the 17th of November 1797, which said last mentioned protest is as follows, viz: "On Friday the 17th of November 1797, at the *request of Caspar Voght,* Esquire, of Hamburgh, merchant, I *Henry Marolf,* notary public, by imperial authority lawfully admitted and sworn, dwelling in this city of Hamburgh, demanded from himself payment of the bill of exchange, the copy

The endorsor of a foreign bill of exchange is not responsible to the endorsee, owing to his *laches* in not giving reasonable notice of its being protested for non acceptance, and not having presented it for payment, and protested it for non payment at the time required by law, and because the drawee, being the holder, could not legally protest it.

Notice of non acceptance of a foreign bill of exchange, must be given to the endorsor in due and convenient time, of which the court are to judge.

If the endorsor of a bill of exchange has not had such notice, he is under no obligation to pay it, and his promise to do so is not binding on him.

whereof is hereunderneath written, speaking at noon at the exchange, his proxy Mr. *John George Burmester*, who declared unto me that this bill could not be paid; therefore I," &c.

The plaintiffs then proved by the said *Wilson*, that the protests for nonacceptance and nonpayment of the said first bill of exchange, which owing to the irregularity of the January packet of the year 1798, were received from the plaintiffs by the said *Wilson* at the *same time*, to wit, on the 13th of March 1798; and that he the said *Wilson*, (who then resided in Philadelphia,) on the 14th of March 1798, wrote a letter to the defendant, (who then resided and still resides in Baltimore,) enclosing to him the protest for nonacceptance, giving him notice of the protest for nonpayment, and as the agent of the plaintiffs, demanding of him the defendant payment of the said bill of exchange with damages, interest and costs thereon, and at the same time, and by the said letter advising the defendant that the said bill and protest for nonpayment were in the hands of him the said *Wilson*, as the agent of the plaintiffs; which letter was, on the same day on which it bore date, put into the post office; and that the defendant offered to pay to the said *Wilson* the principal sum mentioned in the said bill, provided the interest was relinquished.

The defendant then gave in evidence, from a treatise called *Kyd on Bills of Exchange*, that *twelve* days of grace are allowed on bills drawn on Hamburgh; also a letter from the plaintiffs to the defendant, dated at Leeds, the 9th of August 1797, informing him that they had received, through the hands of *John Wilson*, £300 on account of the defendant, and which was placed to his credit; a second letter dated the 9th of October 1797, stating that they had received through the hands of *Wilson*, on account of the defendant, 203*l* 6*s* 9*d* sterling; a third letter dated the 30th of December 1797, enclosing the defendant's account with them, stating a balance, with interest, of 1061*l* 9*s* 11*d* sterling, due from him to them, in which account is a credit of £300 *on the 27th of August*

1797; a fourth letter dated the 4th of January 1798, saying *that since their last they had received information from Mr. Wilson that £200 sterling had been paid by the defendant;* and a fifth letter dated the 8th of February 1798, *announcing that they had on that day advice from Mr. Wilson of the defendant's having paid him on their account* 209*l* 5*s* 0*d* *sterling*, by a draft on *H. D. Goverts* of Hamburgh, which, when in cash, should appear at the defendant's credit; and also a letter from the said *Wilson* to the defendant, dated Philadelphia the 14th of March 1798, saying he had that moment received the enclosed protests for nonacceptance and nonpayment of *A. Macauley's* bill on *Caspar Voght,* for £300 sterling paid to him in May last, on account of the plaintiffs, and that at the foot was a statement of the balance due, with interest, which he hoped the defendant would immediately remit, amounting to 316*l* 19*s* 10*d* sterling; which letters and account were admitted in evidence by the plaintiffs. The defendant also proved, *that the credit of £300 on the 27th of August* 1797, *stated in the same account, was given on account of the said bill of exchange.* Whereupon the defendant prayed the court to direct the jury, that the defendant was not answerable to the plaintiffs in consequence of their *laches* in not giving him reasonable notice of the said bill being protested for nonacceptance, and in not having presented the said bill for payment, and protested it for nonpayment at the time required by law; and because the said bill was protested by the said *Caspar Voght,* the drawee, as being the holder thereof.

*Cooke, Mason,* and *Buchanan,* for the Plaintiffs.
*Martin,* (Attorney General,) and *W. Dorsey,* for the Defendant.

In the argument the following authorities were cited, *Kyd on Bills,* 9, 137, 140, 151. *Chitty on Bills,* 140, 90, 158. 3 *Dall. Rep.* 365, 415. 2 *T. R.* 713. 1 *T. R.* 410, 713, 167, 712. 5 *Burr.* 2670.

CHASE, Ch. J. *(a)*. Notice of the nonacceptance of a foreign bill of exchange must be given to the endorsor in due and convenient time, of which the court are to judge. It is a question of law arising from the particular facts. An endorsor is under no obligation to pay a bill of exchange where he has not had notice of its nonacceptance in due and convenient time, and his promise to pay the bill is not binding upon him.

The Court are of opinion, and so direct the jury, that the defendant is not responsible to the plaintiffs, owing to their *laches* in not giving him reasonable notice of the bill of exchange-being protested for nonacceptance, and in not having presented the said bill for payment, and protested it for nonpayment at the time required by law; and because *Caspar Voght*, the drawee, being the holder of the bill, could not legally protest the same. The plaintiffs excepted, and suffered a *nonsuit*.

*(a) Duvall* and *Done*, J. concurring.