JANE KEIL, APPELLANT, VS. MARY L. WEST ET AL., APPELLEES.

1. In a bill for partition the allegation that the cotenants are seised in common of the lands is a sufficient allegation of the complainant's possession.

2. The possession of one tenant in common is *prima facie* the possession of all the cotenants. The seisin necessary to maintain a bill for partition of land discussed.

3. Where a bill for partition states that the complainant and her sisters, who are defendants, are each seised in fee of an undivided third interest in the lands, under a deed from a common grantor, and that no one else is interested in the property except that their mother, a defendant, "claims to have some interest therein and to be in possession of the premises," and that she "refuses to set forth her interest or join in partition," and it prays that the shares belonging to any of the parties may be ascertained and settled, and partition be made : *Held*, (*a*) The bill sufficiently states the quantity or proportionate share held or claimed by the several owners or others interested, and such other matters as may be necessary to enable the court to adjudicate upon the rights and interests of the parties, as required by the statute. (*b*.) A decree for partition, made after a default against the mother, and a report of the master, and adjudging that each of the sisters is entitled to a third part in fee simple, and that a partition be made and appointing commissioners to make it and assign each of them her share, adjudicates the rights of all the

parties, and that the mother had no interest in the premises, and it is supported by the bill.

4. Such decree having been followed by a decree of sale after a report, justifying the latter, the purchaser thereat, to whom a conveyance has been made, is entitled to a writ of assistance to put him in possession against such mother.

5. A defendant cannot set up in answer to a petition for a writ of assistance, matter of defence to complainant's bill, and as to which he has been concluded by a decree on the merits, or which he has unsuccessfully urged as ground for opening a decree *pro confesso*.

6. The mere commencement of an action of ejectment by a purchaser at a judicial sale is not of itself sufficient to bar the court decreeing such sale from putting him in possession of the property purchased, by a writ of assistance against a party to the decree.

7. After answering a petition for a writ of assistance, and a hearing on the merits, and an order granting the writ, the defendant therein cannot object for the first time in the appellate court to the form of the application for the writ.

8. Upon reference to a master in a partition suit, after a decree *pro confesso*, it is sufficient if he traces the title to a common source.

9. A subpœna issued upon a bill for partition of lands should state that the bill is filed for partition, but need not contain a description of the premises.

10. After a voluntary appearance by a defendant to a bill for partition, he can take no advantage of any defect in the subpœna, or in the service or return thereof.

11. Where, in a suit for partition of lands, a defendant is not a resident of the circuit in which the suit is instituted, or where he is unknown, or where his place of residence is unknown, and an order to appear and plead is made, and it or notice thereof is published, such order or notice must contain a description of the premises sought to be partitioned.

12. All questions arising upon or as to equitable titles should be disposed of in a partition suit by the court of equity in which the bill is filed.

13. A bare denial of a complainant's legal title in a partition suit was never an obstacle to the court of equity proceeding with the cause, nor sufficient to necessitate such court to wait till the title should be settled at law, but it was necessary for a defendant

claiming title in himself or disputing that of the complainant, to set out in his answer his own title or show wherein the complainant's was defective, so that, if it appeared from the showing that there was no valid legal objection to complainant's title, the court of equity could proceed with the partition. The same rule will obtain under the partition statute of Florida in a case where a court of equity cannot settle the legal title.

14. An application by a defendant to open a decree *pro confesso* will not be granted unless he show both reasonable diligence and a meritorious defence.

Appeal from the Circuit Court for Duval County.

Mrs. West and her husband filed their bill *for partition* in chancery, against Mrs. Keil, Mrs. Falana, and Mrs. Peters and her husband.

The subpœna which issued on the bill in March, 1884, does not state " that the bill is filed for a partition of lands," as required by section 3, page 802, McClellan's Digest. On the return day in April the appellant appeared to the suit. The other defendants answered the bill, admitting its statements to be true, and expressing a willingness to submit to such decree of partition or sale as the court should make.

The Circuit Judge made an order appointing a special master to take testimony and report. He accompanies his report with the testimony of Mrs. West, who deposes that Mrs. Peters and Mrs. Falana are her sisters, and Mrs. Keil is their mother, and that she, Mrs. West, is the Mary L. Sidberry mentioned in the deed from Hart's executors, and that the premises named in the deed and bill are the same, and she is now occupying a portion of the same. The deed from Hart's executors was introduced and read in evidence without objection. The master reports it to have been produced by Mrs. Keil on a subpœna *duces tecum*. It conveys the property in fee to the three sisters, and re-

cites that Mr. Hart sold the lot to James Sidberry for $150, to be paid on January 1, 1852, titles to be given when it was paid, and that Hart died on the 4th of September, 1861, after Sidberry had paid $131, and that Sidberry, on the 31st of December, 1866, the date of the deed, assigned all his right and claim to the lot and money paid to the said three sisters, his daughters, and that they have paid $19, the residue of the price. The deed appears to have been recorded September 9, 1867, on the acknowledgment of one of the executors. On July 7, 1884, a decree was made by the Judge of the Third Circuit, acting on account or the illness of the Judge of the Fourth Circuit, ordering and adjudging as follows: " That the defendant, Jane Keil, having appeared, and having failed to set forth any interest that she may have in said premises, and the evidence shown that she has no interest, that the said complainant, Mary L. West, and the defendants, Elizabeth R. Peters, and Laura V. Falana are each entitled to one-third part of the ' lot ' in fee simple." It further decrees that a partition be made, and appoints three commissioners to make the same, and they are directed to assign to each party her share. The commissioners reported that the premises could not be divided without great prejudice to the parties in interest.

There was, afterwards, July 14, 1884, a decree of sale rendered.

On the 12th day of August, the appellant filed a petition to open and set aside the "final decree and decree *pro confesso*," and to restrain all further proceedings under the same, and for permission to come in and defend. It alleges that in 1850, she was the wife of said James Sidberry, and that Mrs. West, Mrs. Peters and Mrs. Falana are the children of such marriage; that in 1851 she and Sidberry made a verbal agreement with Hart for the purchase of the lot, and en-

tered thereunder into the possession of it; that she and her husband were very poor, so that she had to entirely support and provide for her family and children by daily labor, *that her husband might go away and earn means to pay for said premises ; that by the hard labor and frugal savings of herself and her husband a part of the purchase money was raised and paid,* when he, in the latter part of 1859, left home and went out of the State, the eldest child being about *eight years old,* and was not heard from for several years, and was finally reported as dead.

That during all the time after such desertion, she by hard work supported herself and children, and paid the taxes on the premises, " and has so continued to pay the same and support herself and remain in possession undisputed of said premises until now ; she by her sole industry supporting her children until they married and moved away from her to live; that by her own earnings she has improved and benefited the place during all said years ; that after the desertion by her husband she, out of the savings of her own labor paid part of the purchase money, and that finally, in 1866, while he was still absent and reported dead, she paid out of her own earnings to Hart's executors the balance of the purchase money, $19, and that they thereupon made a deed to the said children and delivered the same to petitioner, under the erroneous impression that they had the power so to do, and your petitioner, through ignorance of her rights therein, and without the advice of counsel, consenting thereto." At the date of said deed the eldest child was but *15* years old. That petitioner has remained in the undisputed and undisturbed possession of said land, and every part thereof, and control of the same, renting part thereof from time to time to different tenants thereon, and has rented and suffered at divers times since the respective marriage of said children, each of them to rent and dwell

upon part of the said premises, and complainant is now re-siding on part of said premises, as the tenant of petitioner, and by the permission and consent thereof. The petitioner admits that she received the subpœna to appear, and says that through ignorance of her rights in the premises, and without the advice of counsel, she being too poor to employ the same, and having tried to do so, " she appeared at the clerk's office, whereupon said clerk entered her appearance in said cause as appearing in person ;" that she hath but lately learned, since the making of the final decree, that " she need not and was not compelled to appear to the sum-mons, as the same was defective and void, and did not con-tain a description of the property, or state that the object of the suit was a partition " thereof. Wherefore, she says the appearance, made through mistake and ignorance, was void. That she again tried to employ counsel, and thought and believed she had succeeded, to represent her, and she gave herself no further concern until she received another summons, which she is *now* informed was to appear and tes-tify in said cause on behalf of complainant, at which she was greatly surprised, but she obeyed the same and surrendered the deed from Hart's executors, " which till that time had never been out of her possession and control ;" and she avers the same was done through surprise, mistake and ignorance of her rights and without consent of her said attorney. That seeing, a short time thereafter a notice of sale of the premises posted thereon, she, upon examination, found that a decree *pro confesso* and of sale had been rendered, and that the " attorney employed, as she had supposed and believed, had, without any direct fault or neglect on his part, failed to attend to the same or represent her therein on account of a misunderstanding of the arrangements with her as to his services ; neither to which as the wilful neglect of peti-

tioner can the same be laid." She then alleges that within the last few days she has succeeded in employing counsel, and she avers, as she is advised and believes, that in the premises she has, and has at all times had, a most meritorious defence. The grounds of defence are enumerated as follows:

1. The court has no jurisdiction, the subpœna not stating said suit was for partition, and

2. The bill not setting up the fact that the complainant and defendants, other than petitioner, are the sole owners of the premises, further avers and admits that petitioner is in possession thereof and claims title thereto, and hence the bill is demurrable, as it shows imperfect title in them, and claim of title and possession in petitioner.

3. The bill shows complainant and other defendants base their claim on the said deed, and that it is not evidence properly before the court; it not being properly proved shows no title in them. That there was no delivery of the deed to the grantees. That no power in the executors to make it was shown, but that the legal title to the premises rests in petitioner by long and continued possession thereof as aforesaid, and if not, the same still rests in the heirs or estate of Hart.

4. There was no written agreement for the sale of the lot between Hart and Sidberry, or any persons.

5. The decrees and orders made do not dispose of the title of petitioner or of the other parties, but leave the same to the judgment or discretion of the commissioners.

6. The commissioners did not qualify prior to acting. No rule or notice was served for making the decree of July 15, decreeing a conveyance.

7. Neither complainant nor the other defendants were ever in possession of the premises, or any part thereof, at any time, except as stated, as petitioner's tenants, and by

her permission, leave and license. That she has paid taxes as stated, since 1857, except for the year 1878, when through want of means they were left unpaid, and the property was sold. She afterwards purchased the certificate and took a tax deed, which deed is duly recorded and bears date in March, 1884.

She further says years after the desertion by and reported death of Sidberry she married one Keil, who is now and hath long since been dead, and she has been compelled to support herself by hard labor and the charity of her friends; and that said premises and the rent from them, all she possesses, as a home. That when she paid said last sum of money to said executors the amount was arrived at by computation with said executors on the amount already paid, and she therefore avers that in view of the premises she is alone the lawful owner of the same, or at farthest entitled to an equitable share therein.

On the same day that the foregoing petition was filed, appellant filed also a petition for a rehearing, setting up that the final decree had not been enrolled, and the grounds upon which a rehearing was claimed. These grounds are substantially the same as those set up in the former petition, and where they are not the same, and are of any weight, are covered by the opinion.

The Circuit Court denied the petitions.

The other facts are stated in the opinion.

*H. H. Buckman* for Appellant.

*Randall, Walkers & Foster* and *F. F. L'Engle & Son* for Appellees.

MR. JUSTICE RANEY delivered the opinion of the court:

I. The bill asserts that Mrs. West, who is, with her husband, the complainant, and her two sisters are seised in fee each of one-third undivided interest in the land, by deed from the executors of I. D. Hart, and that no one else is in fact interested in the property, yet that Mrs. Keil, a defendant, "claims to have some interest therein and to be in possession of said premises," yet she " refuses to set forth her interest or to join in partition." Profert of the deed is offered. The bill prays that Mrs. Kiel and the other defendants may be required to answer, and that the shares belonging to any of the parties may be ascertained and settled and a partition made and for general relief. Under our statute the bill may be filed by " tenants in common, joint tenants or coparceners, *against* their co-tenants, coparceners or *others interested in any lands to be divided."* Mrs. Keil was made a party, evidently to give her an opportunity to disclose her interest and have it allotted to her or protected. If she had no interest her presence could harm no one. If she had an interest unknown to the complainants she had an opportunity to make it known; and upon its being set up the court could have adjudicated it, or sent the question to a court of law, if it had been such as a court of equity cannot dispose of under our statute. It might have been that she had even an undivided interest by conveyance from one of the sisters, and that it was unknown to complainants.

The bill does *not* allege that Mrs. Keil is in possession. Its statements given above are sufficient as to the possession of Mrs. West, and her sisters, to give the court jurisdiction. Freeman on Cotenancy, §485. In Jenkins vs. Van-Schaack, 3 Paige, 242, cited for apppellant, it is held that it is not necessary to allege in the bill that complainant is in possession of the premises, as that fact is presumed from the allegation, that the parties are seised in common. Hitch-

cock vs. Skinner, 1 Hoffman, C. R. ; Godfrey vs. Godfrey, 17 Ind., 6 ; 8 Pick., 375. In Miller vs. Dennett, 6 N. H., 109, the petition for partition alleged that Miller was seised in fee of an undivided fourth part, and Mrs. Pickering of another fourth part undivided, of the land. It was proved that the land had, in 1795, been conveyed in fee to John and William Miller, who went into possession. In 1813 John died leaving J. H. Miller and Mrs. Pickering as his heirs, but such heirs had never been in possession, and it was contended by respondents that they must resort to a writ of entry. Survivorship among joint tenants had been destroyed by statute, as in Florida. It was held that in order to sustain a petition for partition it is not necessary that the petitioner should be in actual possession. " In this case " says the opinion, " it does not appear that the petitioner had ever been actually ousted, and among cotenants the possession of one is the possession of all until an actual ouster is shown. There is no foundation for this objection to the *petition.*" In the case at bar there is proof that Mrs. West is actually occupying part of the premises. The contention that the bill alleges that Mrs. Keil is in possession under a claim of title adversely to complainant and her sisters is not supported by reading the bill. All it admits is that she claims to be in possession, but not such a possession as amounts to an ouster of Mrs. West or her sisters. It does not admit that she claims any interest adverse to their right of partition. We do not say that a bill which shows, in compliance with the rule in such cases, that a defendant is in possssssion of the premises claiming them adversely to complainants would not oust the equitable jurisdiction no ; such case is before us, and in its absence we say nothing. 34 Mo., 522 ; 2 Stockton, 277. When one in possession under a tenant in dower held over after death and purchased the shares of some of the reversioners, and

continued in the exclusive possession, but without manifesting an intention to oust the other reversioners, it was held, in Lipscomb vs. Root, 8 Pick., 375, that his possession was according to the title, and that the latter reversioners might maintain partition. "It is only when actually ousted," says Parsons, C. J., "or when there is an avowed adverse possession that one claiming to be a tenant in common is driven to an entry or an action for possession before he can have partition." In Barnard vs. Pope, 14 Mass, 437, an actual corporal seisin is held not to be necessary to maintain partition, and it is said "it is true that by the common law and English statutes the writ of partition cannot be maintained by one tenant in common who is *disseised*, not even if the disseisin be by a cotenant. But every dispossession does not amount to a disseisin, especially by tenants in common. For the possession of one is the possession of all, unless by an actual ouster or an exclusive pernancy of the profits against the will of the others one shall manifest an intention to hold the land by wrong, rather than by the common title. But without such overt acts or a sale and exclusive possession for over twenty years, so that the right of entry shall be gone, disseisin is not to be presumed." There is certainly nothing in this bill or in the record which shows any *such* exclusive pernancy of profits, or overt acts or actual ouster, or adverse holding for seven years, or other particular period, nor does the bill show anything inconsistent with complainant's actual seisin, but on the other hand it alleges everthing necessary as to seisin. 6 N. H., 109; 3 A. K. Marshall, 280. The case of Gravier vs. Ivory, 34 Mo., 522, illustrates how far a bill must go to show adverse possession.

It is objected that the bill does not set out sufficiently the respective titles and shares or portions of the parties, and how they hold the same. It does seem to us that upon

any fair construction of the bill, the complainants have set forth, as shown by the statements given, to the best of their knowledge and belief the names of all the owners, and others interested, the quantity and proportionate share claimed by each and all other matters necessary to enable the court to adjudicate fully upon the rights and interests of the parties, and also how their title was acquired. When complainants state positively who are the owners, and set out their interests and title, and that no one else has any interest, yet that one. person claims an interest, but she refuses to disclose it, and swear "they have read the foregoing bill, and know the contents thereof and know the same to be true," we think it is going very far to assume that something within their knowledge and belief is withheld.

II. It is claimed that the subpœna is defective in not containing " a description of the premises," and not stating that the suit was for partition. The statute does not require that the subpœna shall contain a description of the premises. When the defendant is not a resident of the circuit in which the suit is instituted, or is unknown, or his place of residence is unknown, it requires that an order to appear and answer shall be made and that " such order or *notice of the same* " shall be published and contain *a description of the premises.* It is, however, true, the statute provides that the subpœna shall " state that the bill is filed for partition." This subpœna is defective in not so stating. This defect, like the omission of the officer, to show the original at the time of delivering a copy to Mrs. Keil, has been made immaterial by her voluntary appearance in the cause and the entry of such appearance by the clerk. There is nothing in the record to suggest that her appearance was other than purely voluntary, or that any attempt was made to mislead her. It is too late to discuss defects in such process or in the service or return thereof after its

commands have been voluntarily complied with.  13 Fla., 361, 574.

III. We do not gainsay the doctrine that a complainant can take no decree against a defaulting defendant except such as his bill will sustain. If it states no case he is entitled to no decree.  Suffering a decree *pro confesso* is an admission of the facts which are well pleaded, but the decree does not aid or supplement a bill which does not state a good cause of action.  Baldwin vs. Stribling, 21 Fla ; 25 Ills., 266 ; 40 Ala., 446 ; 2 A. K. Marshall, 123.

In Lease vs. Carr, 5 Blackford, 353, (referred to in Shaw vs. Parker, 6 Blackford, 345, cited by appellant's counsel,) under a statute so general in its provisions as to be regarded by the court as continuing the usual rules of equity as to the case to be stated by a bill of partition, it was held that the petition should have shown the nature and extent of the interest of the petitioner in the land, and that he held in common with the defendants ; that it should have stated their interest in the premises so far as it was known to the petitioner. . "On these points," say the court, "the petition is silent.  It merely requests the appointment of commissioners to decide the land designated in the notice, between the petitioner and George Lease and the unknown heirs of William Lease, deceased." It cannot be claimed that the bill in question has any such aggravated imperfections.  In Godfrey vs. Godfrey, 17 Ind., 6, there were several defendants, and it was alleged in the petition that the ancestor left children and grand children to whom the land descended one of them being the petitioner, and the other being among the defendants, and that *two* other defendants each claim to have title to the land or some part thereof, but that the nature of their claim and title and the amount of their respective interests the petitioner did not know, nor did he know whether they had an inter-

est or not, but they, as petitioner was informed, pretend to have an interest, and are hence made defendants. As to one of them, who filed a demurrer, the court say: "It is alleged that he claimed title, and the proceedings would bar him unless he came in and set up his claim if he had any. Instead of demurring we think he should have set up his claim to the land if he had any." Without saying that our statute is as broad as that of Indiana, we however think the statement of the bill, as given heretofore, sufficient to support a decree *pro confesso*, and a final decree consequent thereupon adjudicating that the daughters were seised in fee each of one-third of the premises.

IV. It is contended that there was no proof of title before the master. Assuming that Mrs. Keil had the right to appear before the master and require final proof of the deed, it is a fact that though she produced it, in compliance with a subpœna *duces tecum*, and it was read in evidence, she made no objection either as to the proof of its execution or as to the non-production of the last will and testament of Hart. It is too late to except for the first time after the case reaches this court. Simmons vs. Spratt, 20 Fla., 496; Emerson vs. Ross, 17 Fla., 125. The production of deeds in cases of partition is not unusual. 2 Daniel Chy. Pl. & Pr., 1154.

In Hamilton vs. Morris, 7 Paige, 39, a partition suit where a decree *pro confesso* was taken against unknown owners of certain undivided shares of the premises, it was held that the master should require the complainant to produce abstracts of his title as a tenant in common in the premises, and to trace it back to the common source of title of the several tenants in common, and that the master should, as far as practicable, give an abstract of the conveyance of the several univided shares or interests of the parties from the time the several shares were united in one

common source. Assuming that Mrs Keil can require it, we see that the master had proved the title from the common source, by evidence found in her possession, and as to the introduction of which she made no objection. It is the very title for which she claimed to have paid part of the purchase money and admits having received the deed of conveyance. She says, in a petition in the record, that if the title is not in her it is in Hart.

The testimony taken by the master shows that Mrs. West occupies part of the premises, and nothing as to any adverse holding.

V. The decree of partition sufficiently passes upon the rights of all the parties, and decrees to those entitled a separate share, as warranted by the bill and proofs, and does not leave this to the judgment or discretion of the commissioners. It decrees that appellant failed to appear and set forth her interest and that the evidence shows she had none, and that each of the three sisters is entitled to a third part in fee simple, that partition be made, and appoints commissioners to make it and to assign to each her share. No more is essential.

VI. The commissioners' report under the decree of partition bears date July 9th, 1884, and the affidavit required to be made by them before acting is dated the next day. The report states that they took the oath before going on the premises, and examining the same, and there is an affidavit of one of the commissioners, which was used on the motion to open the decree, stating that the report was drawn by him, and that it is erroneously dated the 9th instead of the 10th, and that their duties were performed after they qualified. We conclude that the oath was taken before they acted.

VII. We see nothing in the record to relieve the appellant from the imputation of laches in the matter of answer-

ing the bill. She says she received the subpœna to appear, and that, "through ignorance of her rights in the premises, and without the advice of counsel, she being too poor to employ the same, and having tried to do so," she appeared; that she hath lately learned, since the making of the final decree, that she was not compelled to appear as the summons was defective as previously indicated ; upon which account she says her appearance made through ignorance and mistake was void. That she again tried to employ counsel to represent her, and believed and thought she had succeeded, and she gave herself no further concern until she received another summons, which she is now informed was to appear and testify on complainant's behalf; that at this she was greatlv surprised, but she obeyed the same and surrendered the deed ; all of which she says was done through surprise, mistake and ignorance and without the consent of her " said attorney." After this she says she saw a notice of sale posted on the premises, when she found upon examination that a decree *pro confesso* and of sale had been rendered, and " that the attorney employed, as she supposed and believed, had *without any direct fault on his part* failed to attend to the same and represent her therein on account of a misunderstanding of the arrangements with her as to his services ; neither to which as the wilful neglect of petitioner can the same be laid." She then alleges that she has within the last few days succeeded in employing counsel.

The fact that she did not understand the summons to be defective is no reason for avoiding her appearance, nor does it excuse her for not answering. By appearing she seems to have understood what the summons required. There is nothing to show that she learned its requirements otherwise than from the paper itself. To have so learned then she must have read it, which shows some intelligence. Her general assertion of want of intelligence is not corrobo-

rated by anything in the record. *Mere* poverty is not ground for opening a default, and her poverty is, to say the least, questioned, and is not alleged to be a source of any trouble, when, after appearing, she again tried to employ counsel, and believed she had succeeded in doing so. It is evident that she relieves the attorney she may have tried to employ from any charge of direct fault (but herself only of *wilful* neglect) so far as his not acting is concerned. It would be a fruitless effort to attempt to show by anything in this record who the attorney is, what her efforts to employ him really were, why she "supposed and believed" he had been employed, what her arrangements with him really were, and what or wherein the misunderstanding was. Her action in obeying the summons to testify, and surrendering the deed, does not indicate that she was ignorant or mistaken as to its requirements, even if she was surprised at it. We see nothing of which the appellant can complain to be "laid at complainants' door." They have done nothing savoring of sharp practice or wrong upon her. There is no sufficient excuse for her neglect of her rights, if she had any, and her failure to answer the bill.  20 Fla., 235.

Moreover, we do not think she has exhibited in her petition such a meritorious defence as would justify opening the decree had she shown due diligence.

It was never sufficient in a case of this kind for the defendant to merely deny the complainant's title. He had to answer the bill, and if he proposed to set up a title adverse to complainant, or to dispute complainant's title, he had to discover his own title or show wherein the complainant's title was deficient. The titles being spread upon the pleadings, if the court could see that there was no valid legal objection to complainant's title, there was then no reason why the court should not proceed to order partition. When the statement of the title showed a disputed or doubtful legal

title, the court could dismiss the bill, and send the complainant to law or maintain the bill till a court of law had settled the title. Where the title was equitable the court of equity could always settle it. Lucas vs. King, 2 Stockton, 277; Coxe vs. Smith, 4 Johnson's Chancery R., 271. In Street vs. Benner, 20 Fla., 700, it is held that although a court of equity is not the proper tribunal for trying the legal title to lands, yet by the statutes of this State, regulating proceedings in partition where the bill shows the court has jurisdiction, and the complainant's title is put in issue by the defendant's pleadings, the court is authorized to ascertain and adjudicate the rights and interests of the parties, and decree a partition, if it shall appear that the parties are entitled to the same without requiring the legal title to be first tried in a court of law. " The plain meaning of the statute," says the court, " seems to be that all proper issues made in a suit for partition of lands should be tried and determined by the court in which the proceeding is commenced, and according to its rules, and whatever investigation is necessary to enable the court to adjudicate the rights and interests of the parties may be conducted by it. Having the power the court should exercise it."

Barring the effect of our statute, it must be that a party in default would be required to make as good a showing as to the legal title to open a decree, as was necessary to send the case to a court of law; and, under the statute and the above decision of this court, the showing as to merits must be of facts constituting a defence and in a distinct and satisfactory manner. Taking her own statements, she and her husband entered into possession under an arrangement of purchase from Hart, whose title she cannot deny having recognized it in 1866, when she claims to have paid the balance of the purchase money. The deed is dated December 31st, 1866, and there is no room for her to claim an adverse

holding against Hart's title prior to this time.   Here the rights of the daughters begin.   It is true she says the deed was delivered to her by the executors, "under the erroneous impression that they had the power to do so," she "through ignorance of her rights therein, and without the advice of counsel, consenting thereto." She could not have been ignorant then that she had paid part of the purchase money, and she makes no pretence that she did not know to whom the deed was made, or that she did not intend and consent that it should be made as it was, and vest the property in her daughters, for their exclusive benefit; or that she did intend it should vest in them as a trust for her benefit.   She does not inform us what part of the purchase money over the $19 paid out of her *earnings* was paid by her.   It is very difficult to believe that it was not her intention that the deed which she has always held and is recorded should vest the property in her daughters for their benefit, particularly as after the lapse of eighteen years, she does not deny it.   It is too late to construct a trust now. She does not show that the deed was taken during her second marrriage, but says that it was while Sidberry, her first husband, was absent and reported dead.   If she is to be treated as a *feme sole* on account of his absence, then she could do as she pleased with her earnings, but if she could not be so treated, her earnings are not her *separate property*, 4 Otto, 580, even if it be that an investment of separate property by a married woman in the name of her children does not of itself presume an advancement to them.

The statement that she has remained in the undisturbed and undisputed possession of the land, and in control of the same, renting part thereof from time to time to different tenants, does not show that she ever disputed or disturbed the rights of her children, or ever brought home to them the fact that she, their mother, who had received

in their infancy their title deeds, and had occupied the land with them, and managed it for them, claimed it or its rentals in opposition to them. The assertion that she has rented and suffered at divers times since the respective marriages of the children each of them to rent and dwell upon part of the premises, and that complainants are now residing on part of the premises as her tenants, is not a discovery of title by " adverse possession " against the daughters; to say the most of it, it is a very loose way of setting up an acknowledgment by the children of her as their landlord. The terms and conditions of their occupancy, if set out, might lead to a very different conclusion than that their relation was one of landlord and tenant. The facts constituting her defence, if she has any, do not distinctly and satisfactorily appear. 20 Fla., 236.

The fact that while in possession under the circumstances stated, she permitted this property to sell for taxes, and holds a tax deed, creates no title against the daughters. Being their mother and having so long acted really as their trustee and protector, she cannot be permitted to thus suddenly assume a hostile attitude and deprive them of their property. Bur. on Tax., 352; Blake vs. Howe, 15 ; Am. Decisions and note; 33 Cal., 408 ; 38 Cal., 216 ; 24 Mich., 360. There is nothing to show what amount has ever been expended on the property or what rentals she has received.

VIII. There was a decree of sale, and a sale thereunder, and the deed was made to Hildebrandt, on the order of L'Engle, to whom property was knocked off. The sale was confirmed. Hildebrandt files a petition stating, among other things, that the deed was made to him, and that the appellant is in possession of the property, and refuses to deliver the possession thereof to him, and praying for a writ of assistance directing the sheriff to remove her and put him in possession. Appellant answered, alleging in

general terms that she is the owner of the premises by title paramount to the purchaser at such sale, and has at all times been in the undisputed possession, management and control of the premises; that her title is by actual, peaceable and quiet possession, adverse to all persons for more than seven years, *i. e.*, from the year 1859; during which time she has cultivated it, built upon it, and kept it fenced, and setting up also her tax deed of March 17, 1884, and alleging that Hildebrandt has commenced an action of ejectment which is still pending. There was due notice of the application, and the Chancellor granted the writ.

The appellant was not entitled on this application to renew the contest as to her title, which had been disposed of by the order on her petition, if not by the former decrees in the cause. The answer was a waiver of any informality as to the proceedings to obtain the writ. We do not mean to say, however, that they were not apt and sufficient. We see no reason why the writ should not have been granted. 4 Johnson's Chancery R., 608; 82 Ill., 22; 13 N. J. (Eq.), 220; 1 H. & J., 187; 14 N. J. (Eq.), 38; 13 Ibid., 227; Hopkins, C. R., 422. The mere commencement of the ejectment did not oust the court of equity of its jurisdiction or bar the remedy. 82 Ill., 22. Not even an election of remedies was asked for.

We have found it unnecessary to consider the pleadings and testimony in behalf of the appellees on the motion to open the decrees. They are, however, not comforting to appellants.

What we have said practically disposes of the petition for a rehearing.

The decrees and orders appealed from are affirmed.